No. 14-16840

=============================

**In the**
**United States Court of Appeals for the Ninth Circuit**

———————————

KAMALA D. HARRIS,
in her official capacity as the Attorney General of California,
*Defendant-Appellant*,

v.

JEFF SILVESTER, *ET AL.*,
*Plaintiffs-Appellees*.

———————————

**On Appeal from the**
**United States District Court for**
**the Eastern District of California**

———————————

**Brief *Amicus Curiae* of Gun Owners of America, Inc., Gun Owners Foundation, U.S. Justice Foundation, The Lincoln Institute for Research and Education, The Abraham Lincoln Foundation for Public Policy Research, Inc., Institute on the Constitution, and Conservative Legal Defense and Education Fund in Support of Appellees and Affirmance**

———————————

MICHAEL CONNELLY
  U.S. JUSTICE FOUNDATION
  932 D Street, Ste. 2
  Ramona, CA  92065
*Attorney for Amicus Curiae*
  *U.S. Justice Foundation*


*Attorney of Record
June 2, 2015

HERBERT W. TITUS*
ROBERT J. OLSON
WILLIAM J. OLSON
JOHN S. MILES
JEREMIAH L. MORGAN
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, Virginia  22180-5615
  (703) 356-5070
*Attorneys for Amici Curiae*

=============================

## DISCLOSURE STATEMENT

The *amici curiae* herein, Gun Owners of America, Inc., Gun Owners Foundation, U.S. Justice Foundation, The Lincoln Institute for Research and Education, The Abraham Lincoln Foundation for Public Policy Research, Inc., Institute on the Constitution, and Conservative Legal Defense and Education Fund, through their undersigned counsel, submit this Disclosure Statement pursuant Federal Rules of Appellate Procedure 26.1, 29(c).

These *amici curiae*, other than Institute on the Constitution, are non-stock, nonprofit corporations, none of which has any parent company, and no person or entity owns them or any part of them. Institute on the Constitution is not a publicly traded corporation, nor does it have a parent company which is a publicly traded corporation. The *amici curiae* are represented herein by Herbert W. Titus, who is counsel of record, Robert J. Olson, William J. Olson, John S. Miles, and Jeremiah L. Morgan, of William J. Olson, P.C., 370 Maple Avenue West, Suite 4, Vienna, Virginia 22180-5615. *Amicus* U.S. Justice Foundation also is represented herein by Michael Connelly of U.S. Justice Foundation, 932 D Street, Suite 2, Ramona, California 92065.

____s/Herbert W. Titus____
Herbert W. Titus

i

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   THE CALIFORNIA 10-DAY WAITING PERIOD IS NOT A
     PRESUMPTIVELY VALID COMMERCIAL REGULATION OF FIREARMS
     UNDER THE HELLER *DICTA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  THE CALIFORNIA 10-DAY WAITING PERIOD LAW
     UNCONSTITUTIONALLY UNDERMINES THE ULTIMATE PURPOSE OF
     THE SECOND AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. BOTH PARTIES AND THE DISTRICT COURT BELOW HAVE
     ERRONEOUSLY ASSUMED THAT THE SECOND AMENDMENT MAY BE
     INFRINGED, SO LONG AS IT IS NOT UNREASONABLY "BURDENED" . . . . 15

     A.   The Attorney General Wrongly Argues That Its Waiting
          Period Either Imposes No Burden, or an Insubstantial Burden,
          on Second Amendment Rights. . . . . . . . . . . . . . . . . . . . . . . 15

     B.   Plaintiffs Seek to Vindicate Only Their Second Amendment
          Rights, Conceding That the Rights of Others May Be
          Infringed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     C.   The District Court Reached the Correct Resolution, But for
          the Wrong Reasons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

Page

**UNITED STATES CONSTITUTION**
Amendment II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*
Amendment XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 17

**STATUTES**
Calif. Penal Code § 26158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Calif. Penal Code § 26950 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Calif. Penal Code § 27050 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Calif. Penal Code § 27055 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Calif. Penal Code § 27060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Calif. Penal Code § 27065 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13
Calif. Penal Code § 27140 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Calif. Penal Code § 27540 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Calif. Penal Code § 27600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Calif. Penal Code § 27605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Calif. Penal Code § 27610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Calif. Penal Code § 27615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Calif. Penal Code § 27650 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Calif. Penal Code § 30625 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Calif. Penal Code § 31000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Calif. Penal Code § 32650 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**CASES**
District of Columbia v. Heller, 554 U.S. 570 (2008) . . . . . . . . . . . 2, *passim*
Kolbe v. O'Malley, 42 F. Supp. 3d 768 (D. Md. 2014) . . . . . . . . . . . . . 19
McDonald v. City of Chicago, 561 U.S. 742 (2010) . . . . . . . . . . . . . . . 4
Nordyke v. King, 681 F.3d 1041 (9th Cir. 2012) . . . . . . . . . . . . . . . . . 9
Peruta v. San Diego, 678 F. Supp. 2d 1046 (S.D. Cal. 2010) . . . . . . . . . 19
United States v. Marzzarella, 614 F.3d 82 (3rd Cir. 2010) . . . . . . . . . . . . 8

**MISCELLANEOUS**
Founders Constitution (P. Kurland & R. Lerner, eds., Univ. Chi.
    Press: 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

N. Roman, KPCC, "Calif. officers bought 7,600 banned assault weapons through legal exemption". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

A. Scalia & B. Garner, <u>Reading Law</u> (Thomson/West 2012). . . . . . . . . . . 5, 6

H. Titus, "Second Amendment: Rule by Law or By Judges?," 8
    LIBERTY L. REV. 577 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

iv

# INTEREST OF *AMICI CURIAE*[1]

Gun Owners of America, Inc., Gun Owners Foundation, U.S. Justice Foundation, The Lincoln Institute for Research and Education, The Abraham Lincoln Foundation for Public Policy Research, Inc., and Conservative Legal Defense and Education Fund are nonprofit organizations, exempt from federal taxation under sections 501(c)(3) or 501(c)(4) of the Internal Revenue Code. Institute on the Constitution is an educational organization. Each is dedicated, *inter alia*, to the correct construction, interpretation, and application of law. Several of these *amici* have filed *amicus curiae* briefs in other firearms-related and Second Amendment cases in the U.S. Supreme Court and in this Circuit, including the following:

- D.C. v. Heller, On Writ of Certiorari, U.S. Supreme Court, No. 07-290 (Feb. 11, 2008);

- McDonald v. Chicago, On Petition for Writ of Certiorari, U.S. Supreme Court, No. 08-1521 (July 6, 2009);

- McDonald v. Chicago, On Writ of Certiorari, U.S. Supreme Court, No. 08-1521 (Nov. 23, 2009);

---

[1] All parties have consented to the filing of this brief *amicus curiae*. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than these *amici curiae*, their members or their counsel contributed money that was intended to fund preparing or submitting this brief.

1

- *Nordyke v. King*, U.S.C.A. Ninth Cir., No. 07-15763 (Aug. 18, 2010);

- *MSSA v. Holder*, U.S.C.A. Ninth Cir., No. 10-36094 (June 13, 2011);

- *Jackson v. City & County of San Francisco*, U.S.C.A. Ninth Cir., No. 12-17803 (July 3, 2014);

- *Jackson v. City & County of San Francisco*, On Petition for Writ of Certiorari, U.S. Supreme Court, No. 13-765 (Jan. 15, 2015); and

- *Peruta v. County of San Diego*, U.S.C.A. Ninth Cir., Nos. 10-56971 & 11-16255 (Apr. 30, 2015).

## ARGUMENT

At issue in this appeal is whether the California legislature may, consistent with the Second and Fourteenth Amendments to the U.S. Constitution, impose a 10-day waiting period before the lawful purchaser of a lawful firearm may take possession of that firearm.

Claiming the waiting period to be "presumptively lawful" under District of Columbia v. Heller, 554 U.S. 570 (2008), the California Attorney General contends that the State's law is "summarily" constitutional. *See* Opening Brief of Defendant-Appellant ("Calif. Br.") at 33-34. One of the Attorney General's *amici*, the Brady Center to Prevent Gun Violence also argues that, because the "Waiting Period is a 'presumptively lawful' condition on commercial sales of

firearms, it should be upheld without further scrutiny of any type." *See* Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence ("Brady Br.") at 7-8.

Further, claiming that waiting periods such as California's have been "longstanding," the Attorney General asserts that the State's Waiting Period Law, which dates back to 1923,[2] "fall[s] outside the scope of the Second Amendment, as understood by the voters on the ratification of the Constitution," which dates back to 1791.[3] *See* Calif. Br. at 29. Taking a different approach, another of the California Attorney General's *amici* — the Law Center to Prevent Gun Violence — suggests that the "longstanding" presumption of constitutionality need not stretch so far back to such a "'precise founding-era analogue'";[4] it is enough that such laws "have been generally accepted in a wide array of jurisdictions over a significant period of time...." *See* Law Center Br. at 13.

Finally, the Attorney General and the Brady *amicus* brief argue that whatever burden the 10-day waiting period imposes upon the purchase of a firearm in the State is perfectly "reasonable" and, therefore, constitutional. *See*

---

[2] *See* Calif. Br. at 6.

[3] *Id.* at 27.

[4] *See* Law Center to Prevent Gun Violence ("Law Center Br.") at 8.

3

Calif. Br. at 46-63; Brady Br. at 8-11. The Law Center *amicus* claims that the waiting period at most imposes a *de minimis* burden, "a mere ten days." Law Center Br. at 17; *see also* Brief of *Amicus Curiae* Everytown for Gun Safety at 19-20.

None of these arguments is persuasive. Each is plainly inconsistent with the Second Amendment text and historic principles, as recognized by the Supreme Court in Heller and McDonald v. City of Chicago, 561 U.S. 742 (2010).

## I. THE CALIFORNIA 10-DAY WAITING PERIOD IS NOT A PRESUMPTIVELY VALID COMMERCIAL REGULATION OF FIREARMS UNDER THE HELLER *DICTA*.

The Attorney General insists that 10-day waiting period is a "law[] imposing conditions and qualifications on the commercial sale of arms" — within the meaning of that phrase as it appears in Heller — and, therefore, is presumptively constitutional. Calif. Br. at 32. Apparently, the Attorney General believes that any "condition" or "qualification" applicable at the point of sale fits under the Heller *dicta*. *See id*. Indeed, the Brady *amicus* argues that, "based on the 'plain meaning' of the word, the Waiting Period is a presumptively lawful 'condition' on the sale of firearms — just like a constitutionally-permitted fee that

is imposed on firearm sales." *See* Brady Br. at 5. However, because the word "condition" appears in a list of "presumptively lawful regulatory measures" (*see* Heller at 627, n. 26), the plain meaning rule does not apply. Rather, the meaning of "condition" is determined by its context.

According to Heller, there are at least three categories of firearm regulations that are "presumptively" outside the protection of the Second Amendment. First on the list is the "longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id*. at 626. Second are "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Id*. And third are "laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 626-27. By grouping the three categories into a single list, the Court has implicated the Associated-Words Canon of construction. In his treatise on rules of construction, the author of the Heller opinion explains the canon as follows:

> When … any words … are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar. The canon especially holds that "words grouped in a list should be given related meanings." [A. Scalia & B. Garner, Reading Law 195 (Thomson/West 2012).]

5

According to the "associated-words canon ... the terms must be conjoined in such a way as to indicate that they have some quality in common." *Id.* at 196. With respect to <u>Heller</u>'s list of "presumptively lawful regulatory measures," the meaning of the words must be construed in such a way as to identify activities that would be consistent with the Second Amendment. If "condition" were given its ordinary broad meaning, as urged by the Brady Center, and thus applied indiscriminately to any type of restriction on all "commercial sales of arms," then any limit on any firearm purchase would be presumptively lawful. *See* Appellee's Answering Brief ("Answer Br.") at 30.[5]

The district court below correctly ruled that the Attorney General had "not established that the 10-day waiting period is a presumptively lawful longstanding regulatory measure that imposes a condition and qualification on the commercial

---

[5] The Everytown for Gun Safety *amicus* falls into the same interpretive trap, urging this Court to make a wooden distinction between a condition on mere possession of a firearm as contrasted to a condition on a firearm sale, the latter being presumptively lawful, and the former not. *See* Brief of *Amicus Curiae* Everytown for Gun Safety ("Everytown") in Support of Appellant and Reversal at 18. Not only is the proposed distinction not supported by the associated words canon, but also even if it were applied to the 10-day waiting period, the condition is imposed on the time after the sale when a firearm purchaser may take actual possession of the firearm. Thus, according to Everytown's own proposed interpretation of the <u>Heller</u> presumptively lawful list, California's waiting period law is not a "condition ... on the commercial sale of arms."

6

sale of a firearm." *See* <u>Silvester</u> v. <u>Harris</u>, 41 F. Supp. 3d 927, 962 (E.D. Ca. 2014). While the court below compiled a short list of "commercial regulations" that it opined would fit into the <u>Heller</u> presumptively lawful category, a waiting period was not among them. *See id.* at 962-63. And rightfully so.

On its face, the California 10-day Waiting Period Law does not purport to be a permissible "commercial regulation" under <u>Heller</u>. *See* Govt. Br. at 9. Indeed, in the court below, the Attorney General made no effort to show that the law serves any commercial purpose; rather, she claimed only that the "waiting period laws serve the important interests of **public safety** and keeping prohibited persons from obtaining firearms" — "interests" that "[p]laintiffs do not dispute" *Id.* at 943, 964 (emphasis added).

In order for the category of "conditions and qualifications on the commercial sale of arms" to make constitutional sense under the Second Amendment, the phrase must be construed as applying only to those conditions and qualifications that are consistent with regulations that govern commercial activities generally. To extend the presumption to include any condition whatsoever so long as it is attached to a firearm sale would unconstitutionally infringe upon the right to acquire a firearm without which the right to keep and

7

bear arms would be a nullity. *See* United States v. Marzzarella, 614 F.3d 82, 92

n.8 (3rd Cir. 2010).

## II. THE CALIFORNIA 10-DAY WAITING PERIOD LAW UNCONSTITUTIONALLY UNDERMINES THE ULTIMATE PURPOSE OF THE SECOND AMENDMENT.

In a further effort to fit the California 10-day waiting period into one of the

three "presumptively lawful" categories listed in Heller, the Attorney General

and her Law Center and Everytown *amici* contend that the 10-day waiting period

is a "longstanding" legitimate exercise of the state's police powers. *See* Calif.

Br. at 35-38; *see also* Law Center Br. at 4-15; Everytown Br. at 13-18. All

three mistakenly assume that, if a firearm regulation has been around long

enough, that alone justifies the 10-day wait requirement. *See, e.g.,* Calif. Br. at

35-38; *see also* Law Center Br. at 5–10; Everytown Br. at 15-18. But the fact

that a regulation is "longstanding" does not, by itself, meet the criteria laid down

by Heller for presumptively lawful firearm regulations. *See* Answer Br. at 31-

35. To the contrary, the Heller rule of "presumptively lawful" requires the 10-

day wait period to be analogous either (i) to legitimate exclusions of certain

classes of persons, such as felons, who would not otherwise be within the Second

8

Amendment protected class of "U.S. citizens,"[6] or (ii) to bans imposed on the presence of firearms on property, such as school houses and court houses, in which the government has a proprietary interest.[7] Obviously, California's waiting period is not designed to protect any governmental proprietary interest. Thus, to be "presumptively lawful," the waiting period must not discriminate among persons who are within the Second Amendment protected People class.

Yet neither the Attorney General, the Law Center, nor Everytown acknowledges this limiting principle. Instead, the Attorney General maintains that the waiting period laws may be justified by "**public-safety**" concerns. Calif. Br. at 9, 34 (emphasis added). Thus, the Attorney General avers that "[t]here is no dispute that California has an important objective, maintaining **public safety** by reducing firearm violence." *Id.* at 39 (emphasis added). Everytown seconds this claim by recollecting that California's waiting period was initially paired with prohibitions against felons "to combat [a] growing wave of violence." Everytown Br. at 6. The Law Center, too, contends that "California's Waiting Period Laws are ... designed to keep firearms out of the hands of **dangerous**

---

[6] *See* H. Titus, "Second Amendment:  Rule by Law or By Judges?," 8 LIBERTY L. REV. 577, 601-03 (2014).

[7] *See* Nordyke v. King, 681 F.3d 1041, 1045 (9th Cir. 2012).

9

people." Law Center Br. at 13 (emphasis added). Concerns for public safety, however, cannot be the basis for infringing upon the People's right to keep and bear arms.

By focusing on public safety, the Attorney General and her *amici* completely overlook the historic context of the Second Amendment, including the "longstanding" lesson that government appeals to public safety pose the greatest threat to the right of the people to keep and bear arms. As Heller recollected, during the "the tumultuous decades of the 1760's and 1770's" leading up to the American war for independence, King George III "began to disarm the inhabitants of the most rebellious areas." Heller at 594. This action of King George III to disarm persons who were viewed as dangerous was not unprecedented in English history. To the contrary, "[b]etween the Restoration and the Glorious Revolution, the Stuart Kings Charles II and James II succeeded in using select militias loyal to them to suppress political dissidents, in part by **disarming** their opponents." *Id.* at 592 (emphasis added). As the Heller Court rehearsed the history of the Second Amendment:

> Under the auspices of the 1671 Game Act, for example, the Catholic Charles II had ordered general **disarmaments** of regions home to his **Protestant enemies**…. These experiences caused Englishmen to be extremely wary of concentrated military forces run by the state

10

and to be jealous of their arms. They accordingly obtained an assurance from William and Mary, in the Declaration of Right … that Protestants would never be disarmed: "That the subjects which are Protestant may have arms for their defence suitable to their Conditions, and as allowed by Law. This right has long been understood to be the predecessor to our Second Amendment. [*Id.* at 593 (emphasis added).]

Unlike the right secured to Protestants by the 1689 English Bill of Rights, the Second Amendment secures the right to keep and bear arms not just to one segment of the population, but to "all members of the political community." *Id.* at 580. Because the Second Amendment secures the right equally to all of "the People," there is a "strong **presumption** that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581 (emphasis added). Because of this foundational Second Amendment principle, courts must be "wary" of any firearm regulation that does not apply equally to all individual Americans, lest it be found to be unconstitutionally discriminatory. Such is the case with the California Waiting-Period Law.

As alleged in the Complaint, and as recounted by the court below, "this case deals with the constitutionality of various firearms related statutes, [imposing] [a] 10-day waiting period" which, in turn, is subject to "18 categories of exemptions." Silvester at 934. As the Complaint points out, the California

11

laws "allow some people … instant access to firearms, which instant access is denied to Plaintiffs and the general public." Document 1, Dckt. #1 at 13 (Silvester v. Harris (Case 1:11-cv-02137-AWI-SKO)). Not only is this discriminatory treatment "arbitrary, capricious, irrational, [it] makes unjustifiable distinctions between those individuals that Defendants deign to exclude from immediate delivery of firearms and those they do not." *Id.*

Although these allegations have been made in support of a claimed Equal Protection violation under the Fourteenth Amendment (*see id.*), they are equally if not more relevant to a claim grounded in the Second Amendment's **strong presumption** that the right "belongs to all Americans," not just a favored few. Heller at 581. Of particular note here is the exemption from the 10-day waiting period afforded mainly to certain "law enforcement officers."[8] *See* Calif. Penal Code §§ 26950, 27050, 27055, 27060, 27065 (exempting § 26158); §§ 27600, 27605, 27610, 27615 and 27650 (exempting § 27540). For example, according to the Office of the Attorney General, "peace officers have legislative authority to carry and use firearms may without letter signed by the head of their agency … purchase non-rostered handguns and/or large capacity magazines," needing

---

[8] *See* Office of the Attorney General, Frequently Asked Questions, General FAQs #11, https://oag.ca.gov/firearms/dlrfaqs#11G.

only to present "a valid peace officer identification card" to a firearms dealer.[9]
With such a letter, the purchasing peace officer would be "exempt … from the
ten day waiting period." *Id*. Furthermore, a firearm sale by a law enforcement
agency to a retiring peace officer is exempted from the California Penal Code
section that would otherwise subject the purchasing peace officer to wait 10 days
before gaining possession of the firearm. *See* Calif. Penal Code § 27065.

Similarly, there is a discriminatory exemption from the waiting period for
the sale, delivery, or transfer of so-called "assault weapons," which ordinarily
require a special permit. *See* Calif. Penal Code § 27140(f). Additionally, law
enforcement agencies are specifically exempted from the permit requirement for
"assault weapons."[10] *See* § 30625. For the rest of the citizenry, in order to
lawfully purchase an "assault weapon," an individual must apply to the

---

[9] https://oag.ca.gov/firearms/exemptpo.

[10] On December 21, 2011, it was reported that: "An Associated Press
investigation … found that police officers in California have bought 7,600 assault
weapons and high-capacity magazines in the past 10 years that civilians can't buy
– all legally. But it's not clear if they bought those firearms to use on the job…
Police agencies … lobbied for an exemption in the state's assault weapons ban so
officers could buy them to use on the job…." N. Roman, KPCC, "Calif.
officers bought 7,600 banned assault weapons through legal exemption,"
http://www.scpr.org/news/2011/12/21/30459/californian-cops-buy-over-7000-
assault-weapons-ill/.

13

California Department of Justice for a permit (§ 31000), which will only be granted "upon a satisfactory showing that good cause exists for the issuance of the permit to the applicant." § 32650.

According to the Attorney General, the overarching purpose of the 10-day waiting period is to prevent firearms from getting into the hands of the wrong people, especially persons who are so emotionally distraught that they need a "cooling off" period before they can come into possession of a firearm. *See* Govt. Br. at 9-14. Yet, neither the Attorney General nor her *amici* can explain why retiring peace officers, for example, may, as a class, be exempt from that waiting period, nor why law enforcement purchases of firearms generally are exempt.

Of course, the true reason is simple. The law enforcement firearm transaction exemptions are designed to facilitate the transfer of weapons to persons who are aligned with the existing political regime. Such a purpose is directly contradictory to the overarching purpose of the Second Amendment, which secures to "the People" — not just to current and former government agents — the right to keep and bear arms to secure a "free State" should the need arise for "a citizen militia … to oppose an oppressive military force if the

14

constitutional order broke down." Heller at 597, 599. This Court is not at liberty to ignore that central purpose of the Second Amendment.

III. **BOTH PARTIES AND THE DISTRICT COURT BELOW HAVE ERRONEOUSLY ASSUMED THAT THE SECOND AMENDMENT MAY BE INFRINGED, SO LONG AS IT IS NOT UNREASONABLY "BURDENED."**

A. **The Attorney General Wrongly Argues That Its Waiting Period Either Imposes No Burden, or an Insubstantial Burden, on Second Amendment Rights.**

Below, the Attorney General argued that the 10-day waiting period on the transfer of a firearm is not a substantial burden on the right to keep and bear arms. Silvester v. Harris, Order on Defendant's Motion for Summary Judgment, 2013 U.S. Dist. LEXIS 172946 at *6. The Attorney General claimed that since the Plaintiffs each already have at least one gun, waiting a while to get another one constitutes only a "*de minimis*" burden. 41 F. Supp. 3d 927, 943. By this logic, the First Amendment would permit imposing a waiting period on a person seeking to create an Internet blog if the person already had a Twitter account. The district court properly rejected this argument, noting that "[t]he Second Amendment applies to 'arms' and its language does not limit its full protections to a single firearm." *Id*. at 962 n.33.

15

Alternatively, the Attorney General has argued that waiting periods do not even implicate the Second Amendment at all since, during the ratification era, "the relative expense of firearms made obtaining a firearm within 10 days of deciding to purchase one nearly impossible  As a result, the people of 1791 and 1868 would have accepted a 10-day waiting period." *Id.* at 943.  This argument fails even the "giggle test."[11]  Imagine America's founding generation supporting a gun-control statute under which a person had to wait 10 days, and run the transaction through the Crown, before he could loan a musket to his neighbor even as "the British are coming!"  Unsurprisingly, the district court rejected this argument too, finding that "[t]here is no evidence to suggest that waiting periods imposed by the government would have been accepted…."  41 F. Supp. 3d at 962.

**B.  Plaintiffs Seek to Vindicate Only Their Second Amendment Rights, Conceding That the Rights of Others May Be Infringed.**

Plaintiffs do not facially challenge the constitutionality of California's background check or waiting period.  As to the former, Plaintiffs admit that "**it is appropriate** to have a background check."  2013 U.S. Dist LEXIS 172946 at

---

[11]  http://www.abajournal.com/magazine/article/no_laughing_matter_failing_the_giggle_test_might_leave_you_crying

16

*10 (emphasis added). Instead of simply declining to weigh in on an issue not before the court, "Plaintiffs have expressly confirmed that all members of the as applied challenges would still be required to pass a background check when they attempt to purchase a firearm." 41 F. Supp. 3d at 968. Plaintiffs only argued that, based on "the current systems and data available … the 10-day waiting period [is not] reasonable." 2013 U.S. Dist LEXIS 172946 at *10. Plaintiffs argue that "an adequate background check can be performed in a significantly shorter period of time." *Id.* at 16. According to Plaintiffs, then, Second Amendment rights rise and fall based on technology in the hands of bureaucrats.

As to the waiting period, while Plaintiffs challenged the exemptions to the waiting period under the Equal Protection Clause, the Second Amendment remedy they seek is — paradoxically — more exemptions, but only for select groups of permit holders and repeat gun owners. As the court put it, they seek a "modification of the background check system." 41 F. Supp. 3d at 943. Plaintiffs simply seek to join the club as a favored class of persons exempt from the law. *See* Section II, *supra*. Plaintiffs not only do not object to others being subject to the 10-day waiting period, Plaintiffs unnecessarily "concede[] that … 'it may be appropriate** to subject [persons who passed a background check, but

17

currently may not have a firearm] to a 10-day waiting period.'" 41 F. Supp. 3d at 970 (emphasis added). Plaintiffs, then, all but concede that the rights of others may be infringed, so long as their own are not. Rather than limiting their argumentation to their as-applied challenges, Plaintiffs freely cede ground that is not theirs to give, compromising the rights of other gun owners. The Second Amendment, however, protects all Americans, and no members of "the People" can be excluded. *See* Heller at 581.

### C. The District Court Reached the Correct Resolution, But for the Wrong Reasons.

Although the district court below came to the correct resolution — that California's 10-day waiting period violates the Second Amendment — its analysis was flawed. In denying the Attorney General's Motion for Summary Judgment, the district court below noted that Defendant "at a minimum **concedes that it is a burden and/or infringement on the right to keep and bear arms**." 2013 U.S. Dist. LEXIS 172946 at *8-9. It is obvious that this conclusion is correct because, as the court noted, "[o]ne cannot exercise the right to keep and bear arms without actually possessing a firearm." 41 F. Supp. 3d 927, 962.

Once the Attorney General conceded that the statute infringes a right that the Constitution mandates "shall not be infringed," one would have thought that

would signal the end of the litigation. Unfortunately, however, that was not the end, and the district court held a trial in order to decide whether it is permissible for California to "infringe" a right that "shall not be infringed."[12] In the end, the district court judged that the Attorney General had too severely infringed Second Amendment rights without doing enough to further California's alleged interests (41 F. Supp. 3d at 962, 964, 967, 970, 971). However, this should never have been at issue. The Second Amendment most certainly does not state "shall not be infringed unless a judge thinks the state has a good reason." Yet that was the way the district court analyzed the matter.

The district court noted that this Court has adopted a "two-step Second Amendment framework," where the first step is to determine "whether the challenged law burdens conduct protected by the Second Amendment." 41 F.

---

[12] This is not the first time that a federal district court has so flagrantly contradicted the unambiguous text of the Second Amendment. *See* Peruta v. San Diego, 678 F. Supp. 2d 1046, 1055 (S.D. Cal. 2010) (noting that "by imposing a 'good cause' requirement before a concealed weapon's [sic] permit can be issued, the State **undoubtedly infringes Plaintiff's right** to 'possess and carry weapons in case of confrontation,'" but then stating that "**[f]or such infringement to pass constitutional muster**, Defendant must at the very least demonstrate that it is necessary...."); *see also* Kolbe v. O'Malley, 42 F. Supp. 3d 768, 789 (D. Md. 2014) (after "assum[ing] the Firearm Safety Act **infringes** on the Second Amendment," ruling that its **infringement** upon the right to keep and bear arms **could be justified** under intermediate scrutiny as a means to better ensure Maryland's public safety ends.).

19

Supp. 3d 927, 960.  If conduct is not within the scope of the Second Amendment, "then the analysis ends and there is no violation." *Id.* at 961.  That first step should be the only step — either the conduct is within the scope of the Second Amendment protection, or it is not; either Second Amendment rights are infringed, or they are not, and thus a law is either unconstitutional, or it is not.

However, since <u>Heller</u> was decided, too many federal judges have not been content to give the unambiguous words of the Second Amendment their simple, plain meaning, choosing instead to devise multi-part tests by which they empower themselves to substitute their judgment for those who wrote and ratified the Second Amendment.  Complicating <u>Heller</u> with a judge-created "step two," judges first use something of a sliding scale to decide whether a given law "burdens" (infringes) either "core" or non-"core" Second Amendment conduct. 41 F. Supp. 3d at 961.  Judges then use yet another sliding scale to decide, according to their individual sensibilities, how severe the burden is on the protected conduct.  *Id.* at 961.  Then, based on these multiple layers of subjective analysis, judges decide whether to apply either a strict scrutiny or intermediate scrutiny balancing test.  *Id*.  Though rejected by <u>Heller</u>, this Court still uses what Justice Scalia described as "judge-empowering 'interest-balancing

20

inquir[ies]'"[13] to provide yet additional leeway for judges to decide how they feel about the government's justifications for its infringement, and whether they believe the infringement serves an important governmental purpose. As a last step, judges are authorized to approve unconstitutional statutes if they seem really important to promote vague notions of public safety and the common good.

In this case, after determining that California's waiting period infringes Second Amendment rights, the district court decided that the burden (infringement) implicated "**core**" Second Amendment rights — *i.e.*, the very ability to "keep and bear arms." *Id.* Moreover, the district court felt that the burden on Second Amendment rights was **significant**, since the 10-day waiting period makes it temporarily impossible for a person to possess firearms, forcing them to "forego the exercise of their Second Amendment right to keep and bear arms." *Id.* at 962. Finally, while the district court acknowledged that "public safety and keeping firearms out of the hands of prohibited individuals are important interests," it noted that the 10-day waiting period was "not a reasonable fit" for: (i) those whose background check has cleared; (ii) those who have a concealed carry permit; and (iii) those who "possess both a valid COE

---

[13] *See* Heller, 554 U.S. at 634.

and a firearm as confirmed by the AFS system." 41 F. Supp. 3d at 964, 967, 970, 971.

When an analysis of the text and context of the Second Amendment is replaced by this sort of use of judge-empowering tests, many federal judges come to believe it is within their power to decide whose Second Amendment rights deserve protection and whose are infringe-able. The Second Amendment however, grants judges no such authority, and allows for no such distinctions among "the People."

This Court should uphold the district court's decision striking down California's 10-day waiting period, but not just for reasons that pertain to the Plaintiffs in this case, or because it places a significant burden on some gun owners (even though it clearly does), or because the waiting period does not advance the government's legitimate interests (even though it clearly does not) — but for the sole and unequivocal constitutional reason that it infringes the right to keep and bear arms.

## CONCLUSION

A 10-day waiting period between sale and possession of a firearm may not appear to the Attorney General and her *amici* as a significant infringement upon

the Second Amendment right to keep and bear arms. James Madison warned, however, "[that] it is proper to take alarm at the first experiment on our liberties," lest the constitutional principle be lost to pragmatic precedents. Memorial and Remonstrance p. 82, 5 Founders Constitution 82 (P. Kurland & R. Lerner, eds., Univ. Chi. Press: 1987). Such is the case here. A constitutional right may not long endure if courts allow the founding principles to be disregarded. Only by adherence to the original meaning of the historic text may our liberties be preserved. Although the district court ruling in favor of Plaintiffs should be affirmed, this Court should do so for the right reason — because the California Waiting Period law, on its face, unconstitutionally infringes the People's right to keep and bear arms.

Respectfully submitted,

/s/Herbert W. Titus

MICHAEL CONNELLY
 U.S. JUSTICE FOUNDATION
 932 D Street, Ste. 2
 Ramona, CA 92065
*Attorney for Amicus Curiae*
 *U.S. Justice Foundation*

June 2, 2015
*Attorney of record

HERBERT W. TITUS*
ROBERT J. OLSON
WILLIAM J. OLSON
JOHN S. MILES
JEREMIAH L. MORGAN
 WILLIAM J. OLSON, P.C.
 370 Maple Avenue West, Suite 4
 Vienna, Virginia 22180-5615
 (703) 356-5070
 *Attorneys for Amici Curiae*

26

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

IT IS HEREBY CERTIFIED:

1.      That the foregoing Brief *Amicus Curiae* complies with the word

limitation set forth by Circuit Rule 29-2(c)(3), because this brief contains 4,986

words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a proportionally spaced typeface using

WordPerfect version 14.0.0.756 in 14-point CG Times.


     /s/Herbert W. Titus
Herbert W. Titus
Attorney for *Amici Curiae*

Dated: June 2, 2015

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of Gun Owners of America, Inc., *et al.*, in Support of Appellees and Affirmance, was made, this 2nd day of June 2015, by the Court's Case Management/Electronic Case Files system upon the attorneys for the parties.

    /s/Herbert W. Titus
Herbert W. Titus
Attorney for *Amici Curiae*