No. 14-16840

In the
**United States Court of Appeals**
for the Ninth Circuit

KAMALA HARRIS,
in her official capacity as the Attorney General of California
*Defendant-Appellant*,

v.

JEFF SILVESTER, et. al.,
*Plaintiffs-Appellees*.

On Appeal from the United States District Court
for the Eastern District of California, No. 1:11-cv-02137-AWI-SKO
(Hon. Anthony W. Ishii, Judge)

**BRIEF OF CALIFORNIA RIFLE AND PISTOL ASSOCIATION
AND GUN OWNERS OF CALIFORNIA AS AMICI CURIAE
IN SUPPORT OF APPELLEES AND AFFIRMANCE**

C.D. Michel - S.B.N. 144258
Clinton B. Monfort - S.B.N. 255609
Anna M. Barvir - S.B.N. 268728
Michel & Associates, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: 562-216-4444
Fax: 562-216-4445
CMichel@MichelLawyers.com
Counsel for Amici Curiae

## <u>CORPORATE DISCLOSURE STATEMENTS</u>

California Rifle and Pistol Association has no parent corporations. Because it has no stock, no publicly held company owns 10% or more of its stock.

Gun Owners of California has no parent corporations. Because it has no stock, no publicly held company owns 10% or more of its stock.

Date: June 02, 2015

Respectfully submitted,

 /s/ C.D. Michel _____
C.D. Michel
*Counsel for Amici Curiae*

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE . . . . . . . . . . . . . . . . 1

STATEMENT REGARDING PARTICIPATION BY PARTIES, THEIR ATTORNEYS, OR OTHER PERSONS IN FUNDING OR AUTHORING THE BRIEF . . . . . . . . . . . . . . . . . 2

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      **I.**      **The Supreme Court's Reference To "Presumptively Lawful" Regulations Does Not Shield Laws Like California's Outlier Waiting Period Law From Constitutional Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      **II.**     **The State Has Not Met Its Burden to Establish That Its Waiting Period Law is Narrowly Drawn To Advance Public Safety** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brown v. Entm't Merchants Ass'n.*,
    131 S.Ct. 2729 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Buckley v. Valeo*,
    424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*District of Columbia v. Heller*
    554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Edenfield v. Fane*,
    507 U.S. 761 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Heller v. District of Columbia* ("*Heller II*"),
    670 F.3d 1233 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jackson v. City & County. Of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Kole v. Village Of Norridge*,
    941 F.Supp.2d 933 (N.D. Ill. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kwong v. Bloomberg*,
    723 F.3d 160 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*McCutcheon v. Fed. Election Comm'n.*, –U.S.–,
    134 S. Ct. 1434 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

**CASES**

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Metro Lights, L.L.C. v. City of Los Angeles,*
    551 F.3d 898 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Peruta v. County of San Diego,*
    742 F.3d 1144 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Turner Broad. Sys., Inc. v. F.C.C.* (*"Turner II"*),
    520 U.S. 180 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 18

*United States v. Barton,*
    633 F.3d 168 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*United States v. Booker,*
    644 F.3d 12 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Chovan,*
    735 F.3d 1127 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 13

*United States v. DeCastro,*
    682 F.3d 160 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Edge Broad. Co.,*
    509 U.S. 418 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

iv

## **TABLE OF AUTHORITIES** (cont.)

**Page(s)**

CASES

*United States v. Greeno*,
    679 F.3d 510 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Reese*,
    627 F.3d 792 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. O'Brien*,
    391 U.S. 367 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Smoot*,
    690 F.3d 215 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Vongxay*,
    594 F.3d 1111 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Vanguard Outdoor v. City of Los Angeles*,
    648 F.3d 737 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wrenn v. District of Columbia*,
    No. 15-VC-162-FJS, Dkt. 13 (D.D.C. May 18, 2015) . . . . . . . . . . . . . . . 15

STATUTES

D.C. Code § 22-4508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

D.C. Code § 7-2502.01(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Haw. Rev. Stat. § 134-2(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

v

## <u>TABLE OF AUTHORITIES</u> (cont.)

**Page(s)**

STATUTES

Haw. Rev. Stat. § 134-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

720 Ill. Comp. Stat. 5/24-3(A)(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Md. Code Ann., Pub. Safety §§ 5-123 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Md. Code Ann., Pub. Safety §§ 5-118(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Md. Code Ann., Pub. Safety §§ 5-143(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.J. Sta. Ann. § 2C:58-2(a)(5)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.Y.C. Admin. Code § 10-131(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

N.Y. Penal Law § 400.00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Wis. Stat. Ann. § 175.35(2)(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE

Pursuant to Rule 29(c)(4) of the Federal Rules of Appellate Procedure, the California Rifle and Pistol Association and Gun Owners of California respectfully submit this amici curiae brief, with the consent of all parties, in support of Appellees.

Founded in 1875, California Rifle and Pistol Association ("CRPA") is a non-profit organization that seeks to defend the Second Amendment and advance laws that protect the rights of individual citizens. CRPA regularly participates as a party or amicus in litigation challenging unconstitutional laws. CRPA works to preserve the constitutional and statutory rights of gun ownership, including the right to self-defense, the right to hunt, and the right to keep and bear arms. CRPA is also dedicated to promoting the shooting sports, providing education, training, and organized competition for adult and junior shooters. CRPA's members include law enforcement officers, prosecutors, professionals, firearm experts, the general public, and loving parents.

Gun Owners of California ("GOC") is a California non-profit organization formed in 1974. GOC is a leading voice in the state of California, supporting the rights to self-defense and to keep and bear arms guaranteed by the Second

Amendment. GOC monitors government activities at the national, state, and local levels that may affect the rights of the American public to choose to own firearms.

Amici offer their unique experience, knowledge, and perspective to aid the Court in the proper resolution of this case. They have at their service preeminent Second Amendment law scholars, as well as reputable firearms and self-defense experts and lawyers with decades of experience in firearms litigation. As such, amici respectfully submit that they are uniquely situated to bring an important perspective to the resolution of the issues raised in this appeal.

## STATEMENT REGARDING PARTICIPATION BY PARTIES, THEIR ATTORNEYS, OR OTHER PERSONS IN FUNDING OR AUTHORING THE BRIEF

Pursuant to Federal Rule 29(c)(5), amici attest that no counsel for a party authored this brief in whole or in part, and that no person other than amici, their members, or their counsel made a monetary contribution to its preparation or submission.

## INTRODUCTION

Amici groups the California Rifle and Pistol Association and Gun Owners of California write to address two points that are relevant to the Court's consideration of this case.

As an initial matter, the Supreme Court's reference to certain "presumptively

2

lawful" regulations in *District of Columbia v. Heller* does not shield laws like California's uncommon waiting period requirement from heightened constitutional scrutiny. 554 U.S. 570, 626 n.26 (2008). A determination of the Second Amendment's scope necessarily turns on a historical understanding of the right to keep and bear arms. Given that the state's outlier law is not the type of widespread and historically accepted regulation that might appropriately be guarded from Second Amendment analysis, the district court did not err in reviewing it under heightened scrutiny.

Additionally, amici write to address the proper application of intermediate scrutiny to Plaintiffs' claims. Under that test, the state bears the burden of establishing not only that its waiting period law is likely to materially advance an important governmental interest, but that it does so in a manner than is narrowly drawn  to achieve that interest. The Supreme Court has instructed that, under intermediate scrutiny, narrow tailoring requires the government to establish that its restriction is not substantially broader than necessary to achieve its objectives—an issue on which the government is afforded no deference.

Because the State has not—and cannot—establish that its law is narrowly tailored to advance public safety as applied to the countless individuals who already own firearms and have undergone a new background check, the district

3

court properly concluded that the law violates the Second Amendment as applied
to these individuals.

## ARGUMENT

**I.    THE SUPREME COURT'S REFERENCE TO "PRESUMPTIVELY
LAWFUL" REGULATIONS DOES NOT SHIELD LAWS LIKE
CALIFORNIA'S OUTLIER WAITING PERIOD LAW FROM
CONSTITUTIONAL REVIEW**

In response to concerns raised by the District of Columbia and its amici in

*District of Columbia v. Heller*, the Supreme Court clarified that its decision

confirming that the Second Amendment protects an individual, fundamental right

would not spell doom for all firearm regulations. 554 U.S. 570, 626-27. The Court

noted that its opinion would not "cast doubt" on "longstanding prohibitions on the

possession of firearms by felons and the mentally ill," "laws forbidding the

carrying of firearms in sensitive places such as schools and government buildings,

or laws imposing conditions and qualifications on the commercial sale of arms."

*Id*. In a footnote, the Court described these restrictions as "presumptively lawful"

regulatory measures. *Id*. at 627 n.26.

Two years later, the Supreme Court was tasked with deciding whether the

Second Amendment applies to state and municipal governments. *McDonald v. City*

*of Chicago*, 561 U.S. 742 (2010). Much like the District of Columbia in *Heller*, the

4

City of Chicago in *McDonald* expressed fears that if the Court answered this question in the affirmative, it would jeopardize virtually all gun laws. *McDonald*, 561 U.S. at 785. Echoing *Heller*, Justice Alito assured that, "[d]espite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms." *Id*. at 786.

These assurances from the Supreme Court were hardly surprising. Just as some regulations are permissible under the First Amendment, so too are some restrictions likely compatible with the Second. Accordingly, the Court suggested (without affirmatively deciding) that some restrictions do not run afoul of the right to keep and bear arms. *Heller*, 554 U.S. at 626-27 n.26, 635. Had the Court meant to put conclusive weight on the constitutionality of these restrictions, it would have said so. But it did not. And nothing in the language of *Heller*'s footnote 26 suggests that all such laws are immune from Second Amendment scrutiny. As the Supreme Court itself explained just one footnote earlier in the *Heller* opinion, "[it] is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued." *Id*. at 625 n.25.

Ostensibly, firearm laws (whether presumptively lawful or not) will not run afoul of the right to keep and bear arms if they either regulate conduct falling

5

outside the scope of the Second Amendment or if they survive appropriate constitutional scrutiny. Although *Heller* did not expressly adopt a complete analytical model for resolving Second Amendment challenges, it made clear that the scope of the right turns on a historical understanding of the Second Amendment at the time of the Founding through ratification of the Fourteenth Amendment. *Heller*, 554 U.S. at 592, 605-19; *United States v. Chovan*, 735 F.3d 1127, 1133 (9th Cir. 2013) (citing *Heller*, 554 U.S. at 576-605); *Ezell v. City of Chicago*, 651 F.3d 684, 701-03 (7th Cir. 2011); Appellee's Answering Br. ("AAB") at 23-24. Since then, this Court and a number of other circuits have adopted a two-step framework that applies either strict or intermediate scrutiny to laws falling within the Second Amendment's scope. *Chovan*, 735 F.3d at 1136-36 (citing *Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1233, 1251-58 (D.C. Cir. 2011); *Ezell*, 651 F.3d at 201-04; *United States v. Reese*, 627 F.3d 792, 800-05 (10th Cir. 2010)).

At the first step, a firearms regulation "must be judged on its 'historical justifications' to determine whether it falls within the scope of the Second Amendment right." *Heller*, 554 U.S. at 592, 605-09; *Chovan*, 735 F.3d at 1133; *see* AAB at 32. This has already been borne out in the courts. Laws that can be traced to the Founding Era as restricting conduct that was historically understood to fall

outside of the Second Amendment's scope are routinely upheld without further analysis. For example, as Appellees explain, multiple circuit courts have already acknowledged that felon-in-possession statutes codify restrictions that were understood since the Founding to be consistent with the right to bear arms. AAB at 33-34. Accordingly, courts have consistently upheld felon-in-possession statutes because the possession of firearms by these individuals falls outside the scope of the Second Amendment right as historically understood. *See*, *e.g.*, *United States v. Smoot*, 690 F.3d 215, 221 (4th Cir. 2012); *United States v. Greeno*, 679 F.3d 510, 520-21 (6th Cir. 2012); *United States v. Barton*, 633 F.3d 168, 172-73 (3d Cir. 2011); *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010).

On the other hand, courts have regularly refused to shield laws from constitutional scrutiny absent evidence that the restrictions would have been understood to fall outside the scope of the Second Amendment at the time of the founding and ratification—even if those restrictions could arguably be shoe-horned into one of the "presumptively lawful" categories or if a handful of analogues have been enacted in some jurisdictions since that time period. As Appellees correctly note, this Court rejected the city's argument in *Jackson v. City and County of San Francisco* that its locked-storage requirement for handguns should be immune from Second Amendment review based on several Colonial-Era gunpowder

7

storage requirements. AAB at 26-27. Moreover, this Court also concluded that the city's reliance on a number of locked *firearm* storage laws of twentieth century vintage, Br. for Appellees at 18-19, *Jackson v. City & County of San Francisco*, 746 F.3d 953 (9th Cir. 2014), were plainly insufficient to establish a historical "tradition of proscription" that would insulate the City's law from Second Amendment protections. *Jackson*, 746 F.3d at 963 (citing *Brown v. Entm't Merchants Ass'n.*, 131 S.Ct. 2729, 2734 (2011); *Chovan*, 735 F.3d at 1139).

Notably, the city in *Jackson* also argued that its law regulating the commercial sale of a particular type of ammunition by firearms dealers was a "presumptively lawful" "condition or qualification" on the sale of arms. ER 117-118, *Jackson*, 746 F.3d 953. The city provided historical evidence in the way of a number of nineteenth and twentieth century laws restricting the sale of particular types of ammunition and firearms. *Id.* at 117-119. Much like the district court in this case, this Court in *Jackson* concluded that the laws cited by San Francisco did not create a constitutional safe harbor for the city's ammunition regulation, and instead evaluated the law under intermediate scrutiny. *Jackson*, 746 F.3d at 965.

Similarly, in *Kwong v. Bloomberg*, 723 F.3d 160 (2d Cir. 2013), the Second Circuit considered a law that conditioned New York City residents' ability to purchase and possess firearms on the payment of $340 licensing fee. *See* N.Y.C.

8

Admin. Code § 10-131(a)(2); N.Y. Penal Law § 400.00. Despite the fact that the law was rooted in New York law dating back to 1911, the Second Circuit did not declare that the law fell outside the Second Amendment's scope, and instead concluded that the law survives intermediate scrutiny. *Kwong*, 723 F.3d at 168-69.[1]

As these cases demonstrate, laws that were not historically understood to fall outside the scope of the right must satisfy constitutional scrutiny, regardless of whether they may be characterized as a "condition or qualification" on commercial sales or whether certain jurisdictions enacted similar legislation some time ago, but after the relevant time period. Plainly, if these restrictions on commercial purchases and sales fell outside of the right altogether, there would have been no need for the reviewing court to conclude that the restrictions would survive heightened means end review. To be sure, "the Supreme Court explained that laws regulating the commercial sale of firearms are 'presumptively lawful,' " but "it did not purport to exempt" all such laws from constitutional scrutiny outright. *Kole v. Village of*

---

[1] Although the Second Circuit expressed some skepticism that the law should be subject to heightened scrutiny, the court's reluctance was not based on contemplation of whether the law fell outside the Second Amendment right because of its historical pedigree. Rather, the court's hesitancy stemmed from the unique analytical framework adopted by the Second Circuit in *United States v. DeCastro*, which only applies heightened scrutiny to "substantial" Second Amendment infringements. *Compare Kwong*, 723 F.3d at 172, *with United States v. Decastro*, 682 F.3d 160, 164-65 (2d Cir. 2012)

*Norridge*, 941 F.Supp.2d 933, 943 (N.D. Ill. 2013). That determination necessarily turns on a historical understanding of the right. *Heller*, 554 U.S. at 592, 605-19; *Ezell*, 651 F.3d at 701-03.

And surely this must be. To conclude otherwise would mean that a law may become immune from Second Amendment analysis because a small minority of jurisdictions decided to enact a restriction on conduct that was not historically understood as falling outside the scope of the right. This would essentially place the scope of the constitution in the hands of the very future lawmakers the Second Amendment was intended to restrict. Indeed, amicus Everytown asks this court to do just that, thus shielding virtually any restriction from Second Amendment scrutiny if it has been on the books long enough. Everytown for Gun Safety Amicus Curiae Br. ("Everytown Br.") at 14-18.

*Heller* plainly does not condone such an approach. Rather, *Heller* simply characterized certain restrictions as "longstanding" without implying that the mere fact of being longstanding makes them presumptively lawful—without implying that any such law falls outside the right altogether. 554 U.S. at 626-27 n.26, 635. What's more, the Court expressly cautioned that the rights protected by the Second Amendment "are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures . . . think that scope too

10

broad." *Id*. at 634-35. As the First Circuit made clear in its opinion applying constitutional scrutiny to a law that was argued to fall outside the Second Amendment right, the mere "age of a regulation" cannot be "key to its constitutionality," let alone block it from constitutional scrutiny altogether. *United States v. Booker*, 644 F.3d 12, 23-24 (1st Cir. 2011).

Even if California's rare "wait for waiting's sake" requirement for persons who already own firearms was shoe-horned into one of *Heller*'s "presumptively lawfuls," that presumption can be overcome with evidence in the historical record. "By describing certain restrictions as "presumptively" lawful, . . . the Supreme Court implied that the presumption may be rebutted." *Barton*, 633 F.3d at 173 (citing *Heller*, 554 U.S. at 626-27 n.26). Indeed, the Supreme Court merely assured that nothing *in the **Heller** opinion* should be taken to cast doubt on the regulations it identified— it did not suggest that *nothing at all* could cast doubt on their constitutionality. *See* 554 U.S. at 626-27. That the Court stated that it did not undertake an "exhaustive historical analysis" itself suggests that such analysis *can* cast doubt upon the regulations listed in *Heller*. *Id*. In any event, certainly such an analysis may cast doubt on the constitutionality of provisions, like those at issue here, that were not mentioned in *Heller*.

The record below is replete with historical evidence to rebut any conceivable

11

presumption that California's waiting period law restricts conduct outside the

Second Amendment's scope. *See* AAB at 29-36. Aside from California, amici are

aware of only five states and the District of Columbia that impose mandatory

waiting requirements for persons already known to have a firearm, most of which

were enacted in the later half of the twentieth century.[2] Neither the federal

government—nor the remaining 44 states in the Union—impose a waiting period

for existing owners to take possession of a new firearm. This is a far cry from the

nationwide restrictions on the possession of firearms by violent criminals that can

be traced to the Founding Era or from widespread and historically accepted

regulations on the sale of arms. Plainly, a handful of outlier waiting period laws of

recent vintage are not historically understood to fall outside the Second

Amendment's scope.

In light of the ample historical record on this point, the Court did not abuse

its discretion in finding that California's waiting period restrictions implicate the

---

[2] Wisconsin does not require registration but requires CCW holders to wait. Wis. Stat. Ann. § 175.35(2)(d). New Jersey does not require registration but requires CCW holders to wait. N.J. Sta. Ann. § 2C:58-2(a)(5)(a). Maryland requires registered handgun owners to wait, including CCW holders. Md. Code Ann., Pub. Safety §§ 5-123, 5-118(b)(1), 5-143(a)(1). Illinois does not require registration but requires CCW holders to wait. 720 Ill. Comp. Stat. 5/24-3(A)(g). Hawaii requires registered firearm owners to wait. Haw. Rev. Stat. §§ 134-2(e), 134-3. Washington D.C. requires registered firearm owners to wait, including CCW holders. D.C. Code §§ 22-4508, 7-2502.01(a).

Second Amendment's protections. The district court was thus bound to, and did, apply constitutional scrutiny. And while some commercial restrictions will no doubt survive heightened means-end scrutiny, the district court properly concluded that the state's uncommon waiting period law is not among them. ER 49:18-23; AAB at 49-58.

## II. THE STATE HAS NOT MET ITS BURDEN TO ESTABLISH THAT ITS WAITING PERIOD LAW IS NARROWLY DRAWN TO ADVANCE PUBLIC SAFETY

Given that California's waiting period law does not fall outside the Second Amendment's parameters, the district court appropriately reviewed its constitutionality under heightened (in this case, intermediate) scrutiny. *Heller*, 554 U.S. at 628 n.27; *Chovan*, 735 F.3d at 1136-37; ER 41-44. Amici write to address the burdens the state is required to satisfy under this standard. Because the state has not—and cannot—meet these burdens, the Court should affirm the decision below.

When evaluating the constitutionality of a statute under intermediate scrutiny, the government must first establish that the law was enacted to promote an important governmental interest. *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968). Second, it must demonstrate that the law is substantially related to that interest or that it is likely to further that interest to some "material degree." *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993). And finally, the government

13

carries the burden of establishing that its chosen means of furthering that objective is narrowly tailored to that end. *McCutcheon v. Fed. Election Comm'n.*, –U.S.–, 134 S. Ct. 1434, 1456-57 (2014). While narrow tailoring under intermediate scrutiny need not be the "least restrictive means" of accomplishing its stated objective, the government still bears the burden of establishing that the law is "closely drawn to avoid unnecessary abridgment" of constitutional rights. *Id.* at 1456 (quoting *Buckley v. Valeo*, 424 U.S. 1, 25 (1976)); *see Ward v. Rock Against Racism*, 491 U.S. 781, 782-83 (1989).

According to California, it enacted the waiting period law to promote public safety. Opening Br. of Def.-Appellant ("AOB") at 45-46. And it attempted to further that objective by requiring law-abiding citizens to wait 10 days before taking possession of newly purchased firearms, including those who already own a firearm and have passed a new background check. While the district court quite logically concluded that these policies are not likely to advance public safety, ER 45-54, the challenged provisions are separately unconstitutional because they are not "narrowly drawn" to those interests.

The Supreme Court recently and unequivocally instructed that laws restricting constitutional conduct cannot survive intermediate scrutiny if the government fails to carry its burden of establishing narrow tailoring—regardless of

14

whether the law is likely to advance an important governmental interest.

*McCutcheon*, 134 S. Ct. at1456-57. In *McCutcheon*, the Court concluded that

aggregate limits on campaign finance contributions violate the First Amendment.

*Id*. at 1462. After finding those limits unconstitutional because they failed to

meaningfully promote the government's objective of preventing corruption, the

Supreme Court went on to hold that "[q]uite apart from the foregoing" the

restrictions separately violated the First Amendment because they were not

"narrowly tailored to achieve the desired objective." *Id*. at 1456-57.

   As one Second Amendment opinion recently acknowledged, narrow

tailoring under intermediate scrutiny requires the government to demonstrate that

its law is "not broader than necessary to achieve its substantial government interest

in preventing crime and protecting public safety." Mem.-Decision & Order, *Wrenn

v. District of Columbia*, No. 15-VC-162-FJS, Dkt. 13 at 13 (D.D.C. May 18, 2015).

Moreover, that opinion noted that both this Court and the Supreme Court have

made clear that the government is not entitled to *any deference* when assessing the

"fit" between the government's important interest and the means selected to

advance it. *Id*. (citing *Turner Broad. Sys., Inc. v. F.C.C.* ("*Turner II*"), 520 U.S.

180 (1997); *Peruta v. County of San Diego*, 742 F.3d 1144, 1177 (9th Cir. 2014)).

As such, California bears the distinct burden of establishing that its waiting period

15

law does not burden substantially more conduct than necessary to further its public safety goals, and it is afforded no deference on this point. *Id*.; *cf. Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012).

Amicus Everytown attempts to mislead this Court by suggesting that the degree of fit required under intermediate should not take into account the law's impact on as-applied challengers. Everytown Br. at 22-23. This is false. To make their case, Everytown cherry picks passages from two underinclusiveness challenges in the commercial speech context. *Id*. (citing *Vanguard Outdoor v. City of Los Angeles*, 648 F.3d 737, 743 (9th Cir. 2011); *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 904 (9th Cir. 2009). As an initial matter, "the narrow tailoring requirement" generally "guards against over-regulation" (as is the case here) "rather than under-regulation" (as is the case in underinclusiveness challenges). *Metro Lights*, 551 F.3d at 911. What's more, although a determination of whether a law is likely to further the government's interest should not be limited to the law's impact on "a single entity" in these commercial speech cases, the Supreme Court has made clear that, even in such cases, the statutes impact on as-applied challengers is "properly addressed" in determining whether the law is "more extensive" than necessary to further the governmental interest. *United States v. Edge Broad. Co.*, 509 U.S. 418, 419, 427-29 (1993). Accordingly, the district

16

court properly considered the degree of fit between the waiting period law and its application to individuals who lawfully own firearms and have been cleared for new purchases.

The state also argues at length that it was entitled to rely on any evidence it reasonably believed was relevant to a determination of whether the law furthers public safety. AOB at 50-54. But that does *not* relieve the state of its duty to establish a narrowly tailored fit between the waiting period law's impact on the as-applied challengers and its public safety objectives. AAB 39-43. At minimum, requiring individuals who *already own guns and have completed a new background check* to continue to wait an arbitrary 10 days to take possession of a new hunting rifle or self-defense firearm fails to satisfy the narrow tailoring requirement under intermediate scrutiny. The background check has *already* been completed. And the purchaser *already* has a gun that could be used to commit any heat of passion crime the state is concerned about. Accordingly, the state has failed to establish, as it must, that broadly sweeping up the as-applied classes and precluding them from taking possession of their firearms for 10 days "does not burden substantially more" conduct than necessary to further its safety interests. *Turner II*, 520 U.S. at 213-14; AAB at 37-43.

Amici do not suggest that the state is required to select the least restrictive

17

means possible to prevent dangerous people from obtaining firearms or using that firearm to commit violence in a fit of rage. But certainly there are a wide array of options available to further the state's public safety interests that fall short of forcing all individuals who the state already knows have guns and passed a background check to sit idly by for 10 days.

Ultimately, the state can offer no explanation why its should not have to establish narrow tailoring in the Second Amendment context even though it is expressly required in the First. And surely it cannot. Such unequal treatment would improperly single the Second Amendment out for "special—and specially unfavorable—treatment," in direct contravention of the Supreme Court's admonition that the Second Amendment is not "a second-class right." *McDonald*, 561 U.S. at 745-46, 780.

Because the waiting period law is not likely to advance its interests as applied to gun owners who have passed a background check, and because the state has not demonstrated that the law does not burden substantially more conduct than necessary to achieve its interests, the district court did not commit reversible error in declaring this requirement invalid under intermediate scrutiny.

## CONCLUSION

For these reasons, amici respectfully ask the Court to affirm the judgment of

the district court below.

Date: June 02, 2015                     Respectfully submitted,
                                        MICHEL & ASSOCIATES, P.C.


                                         /s/ C.D. Michel
                                        C.D. Michel
                                        180 East Ocean Blvd., Suite 200
                                        Long Beach, CA 90802
                                        *Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains (4097) words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).


2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Word Perfect X5

in 14-point Times New Roman font.




Date: June 02, 2015          /s/ C.D. Michel_____
                             C.D. Michel
                             180 East Ocean Blvd., Suite 200
                             Long Beach, CA 90802
                             CMichel@MichelLawyers.com
                             Telephone: 562-216-4444

## CERTIFICATE OF SERVICE

I hereby certify that on June 02, 2015 I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

Donald Kilmer                         *Counsel for Plaintiffs*
The Law Offices of Donald Kilmer
1645 Willow Street, Suite 150
San Jose, CA 95125

Bradley A. Benbrook                   *Counsel for Plaintiffs*
Benbrook Law Group
400 Capitol Mall, Suite 1610
Sacramento, CA 95814

Victor J. Otten                       *Counsel for Plaintiffs*
Otten Law, PC
3620 Pacific Coast Highway
Suite 100
Torrance, CA 90505

Jonathan Michael Eisenberg,           *Counsel for*
Deputy Attorney General
California Department of Justice       *Defendant-Appellant*
300 S. Spring Street, Suite 1702
Los Angeles, CA 90013

Peter H. Chang                              *Counsel for*
Office of the CA Attorney General
455 Golden Gate Avenue                      *Defendant-Appellant*
Suite 11000
San Francisco, CA 94102-7004




Date: June 02, 2015          /s/ C.D. Michel
                             C.D. Michel
                             180 East Ocean Blvd., Suite 200
                             Long Beach, CA 90802
                             CMichel@MichelLawyers.com
                             Telephone: 562-216-4444