

*KAMALA D. HARRIS*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

300 SOUTH SPRING STREET, SUITE 1702
LOS ANGELES, CA 90013

Public: (213) 897-2000
Telephone: (213) 897-6505
Facsimile: (213) 897-5775
E-Mail: Jonathan.Eisenberg@doj.ca.gov

September 16, 2016

*Via CM/ECF*

Molly Dwyer
Clerk of the Court
U.S. Court of Appeals, Ninth Circuit
95 Seventh St.
San Francisco, California 94103-1526

Re: *Silvester v. Harris*, No. 14-16840
    Before Judges Sidney R. Thomas, Mary M. Schroeder, and Jacqueline H. Nguyen
    Argued and submitted February 9, 2016

Dear Ms. Dwyer:

Under Federal Rules of Appellate Procedure 28(j), Appellant notifies the Court of pertinent new legal authority, this Court's opinion in *Wilson v. Lynch*, No. 14-15700 (copy attached).

The *Wilson* decision affirms the trial court's dismissal of a complaint challenging, under the Second Amendment (and other parts) of the Constitution, a federal legislative scheme that prevented the plaintiff from buying a firearm because she possessed a Nevada medical marijuana registry card.

The *Wilson* decision is pertinent for *Silvester* for explaining what showing a government defendant must make to establish a reasonable fit between a firearm law and its objective, under intermediate scrutiny. One important issue in the *Silvester* appeal, extensively briefed, is whether the trial court properly credited Appellant's showing of the reasonable fit between the waiting-period statutes in question and their public-safety objective. (*See* Opening Br. of Def.-Appellant (Dkt. Entry 24-1) at 50-59; Appellant's Reply Brief (Dkt. Entry 60) at 10-26.)

The *Wilson* Court found that the defense there established the requisite fit, justifying the law in question, by (1) citing to four studies and two government surveys—which there were no indications had been considered by Congress—that "suggest a link between drug use, including marijuana use, and violence" and (2) referring to legislative determinations that illegal drug users are likely, because of their drug use, "to experience altered or impaired mental states…that can lead to irrational or unpredictable behavior," to have negative interactions with law-enforcement officers, and to "make their purchases through black market sources who themselves frequently resort to violence." Slip Op. at 16-17.

September 16, 2016
Page 2

The *Wilson* Court also observed that "[b]y citing to the link between unlawful drug users and violence in this case…the Government *incorrectly* conflates registry cardholders with unlawful drug users." Slip Op. at 17 (emphasis added). Nonetheless, the *Wilson* Court held that "the degree of fit…is still reasonable, which is sufficient to survive intermediate scrutiny." *Id.* at 18. A further holding was that although the challenged law "will sometimes burden…the Second Amendment rights of individuals who are reasonably, but erroneously, suspected of being unlawful drug users…the Constitution tolerates these modest collateral burdens…." *Id.*

Sincerely,

*Jonathan M. Eisenberg*

JONATHAN M. EISENBERG
Deputy Attorney General

For    KAMALA D. HARRIS
Attorney General

JME:je
Enclosure

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| S. ROWAN WILSON,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>LORETTA E. LYNCH,<br>Attorney General;<br>BUREAU OF ALCOHOL,<br>TOBACCO, FIREARMS AND<br>EXPLOSIVES; B. TODD<br>JONES, as Acting Director<br>of U.S. Bureau of<br>Alcohol, Tobacco,<br>Firearms and Explosives;<br>ARTHUR HERBERT, as<br>Assistant Director of U.S.<br>Bureau of Alcohol,<br>Tobacco, Firearms and<br>Explosives; and UNITED<br>STATES OF AMERICA,<br>*Defendants-Appellees.* | No. 14-15700<br><br>D.C. No.<br>2:11-CV-01679-GMN-PAL<br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, Chief District Judge, Presiding

Argued and Submitted July 21, 2016
San Francisco, California

Filed August 31, 2016

Before: Susan P. Graber and Richard C. Tallman, Circuit Judges, and Jed S. Rakoff,[*] Senior District Judge.

Opinion by Judge Rakoff

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's dismissal of a complaint challenging the federal statutes, regulations, and guidance that prevented plaintiff from buying a gun because she possesses a Nevada medical marijuana registry card.

The panel preliminarily held that plaintiff lacked standing to challenge 18 U.S.C. § 922(g)(3), which criminalizes possession or receipt of a firearm by an unlawful drug user or a person addicted to a controlled substance. Plaintiff had not alleged that she was an unlawful drug user or that she was addicted to any controlled substance. Nor had she alleged that she possessed or received a firearm. The panel further held that plaintiff's remaining claims were not moot because she represented that she has routinely renewed her registry card.

[*] The Honorable Jed S. Rakoff, Senior United States District Judge for the Southern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that plaintiff's Second Amendment claims did not fall within the direct scope of *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011), which held that the Second Amendment does not protect the rights of unlawful drug users to bear arms. Taking plaintiff's allegations in her first amended complaint as true – that she chose not to use medical marijuana – the panel concluded that plaintiff was not actually an unlawful drug user.

The panel held that 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives to federal firearms licensees, which prevented plaintiff from purchasing a firearm, directly burdened plaintiff's core Second Amendment right to possess a firearm. Applying intermediate scrutiny, the panel nevertheless held that the fit between the challenged provisions and the Government's substantial interest of violence prevention was reasonable, and therefore the district court did not err by dismissing the Second Amendment claim.

The panel rejected plaintiff's claims that the challenged laws and Open Letter violated the First Amendment. The panel held that any burden the Government's anti-marijuana and anti-gun-violence efforts placed on plaintiff's expressive conduct was incidental, and that the Open Letter survived intermediate scrutiny.

The panel held that the challenged laws and Open Letter neither violated plaintiff's procedural due process rights protected by the Due Process Clause of the Fifth Amendment nor violated the Equal Protection Clause as incorporated into the Fifth Amendment. Plaintiff did not have a constitutionally protected liberty interest in simultaneously

holding a registry card and purchasing a firearm, nor was she a part of suspect or quasi-suspect class.

Finally, rejecting the claim brought under the Administrative Procedure Act, the panel agreed with the district court that the Open Letter was a textbook interpretative rule and that it was exempt from the Act's notice-and-comment procedures.

---

## COUNSEL

Charles C. Rainey (argued) and Jennifer J. Hurley, Rainey Legal Group PLLC, Las Vegas, Nevada, for Plaintiff-Appellant.

Abby C. Wright (argued) and Michael S. Raab, Attorneys, Appellate Staff; Daniel G. Bogden, United States Attorney; Civil Division, Department of Justice, Washington, D.C.; for Defendants-Appellees.

---

## OPINION

RAKOFF, Senior District Judge:

Plaintiff-Appellant S. Rowan Wilson acquired a Nevada medical marijuana registry card. She then sought to purchase a firearm, but the firearms dealer knew that Wilson held a registry card. Consistent with a letter issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), the dealer refused to sell Wilson a firearm because of her registry card. Wilson sued, challenging the federal statutes, regulations, and guidance that prevented her from buying a

gun. The district court dismissed Wilson's complaint, and Wilson appealed. We affirm.

## BACKGROUND

Marijuana is classified as a Schedule I controlled substance under the Controlled Substances Act, 21 U.S.C. § 812. As a Schedule I controlled substance, marijuana, under federal law, is deemed to have "no currently accepted medical use in treatment[, and] [t]here is a lack of accepted safety for use of the . . . substance under medical supervision." *Id.* § 812(b)(1)(B) & (C).[1]

This, however, is not the view of the State of Nevada. Although Nevada law criminalizes the possession of marijuana, *see* Nev. Rev. Stat. § 453.336(4), Nevada's Constitution was amended in 2000 to provide for medical marijuana use, *see* Nev. Const. art. IV, § 38. Under a statutory scheme enacted pursuant to this constitutional amendment, a holder of a valid marijuana registration ID card (a "registry card") is exempt from state prosecution for marijuana-related crimes. Nev. Rev. Stat. § 453A.200. To acquire a registry card, an applicant must provide documentation from an attending physician affirming that the applicant has a chronic or debilitating medical condition, that the medical use of marijuana may mitigate the symptoms of the condition, and that the physician has explained to the

---

[1] As we recently observed: "The [Controlled Substances Act] prohibits the manufacture, distribution, and possession of marijuana. Anyone in any state who possesses, distributes, or manufactures marijuana for medical or recreational purposes (or attempts or conspires to do so) is committing a federal crime." *United States v. McIntosh*, No. 15-10117, 2016 WL 4363168, at *11 n.5 (9th Cir. Aug. 16, 2016).

applicant the risks and benefits of the medical use of marijuana. *Id.* §453A.210(2)(a)(1)–(3). Cardholders must also comply with certain ongoing requirements, including limitations on the amount of marijuana they have at one time, *id.* § 453A.200(3)(b), as well as the requirement that they "[e]ngage in . . . the medical use of marijuana in accordance with the provisions of this chapter as justified to mitigate the symptoms or effects of a person's chronic or debilitating medical condition," *id.* § 453A.200(3)(a). A registry card is valid for one year and may be renewed annually by submitting updated written documentation from a physician. *Id.* §§ 453A.220(5), 453A.230(1)(b).

Turning to federal firearms provisions, under 18 U.S.C. § 922(g)(3) no person "who is an unlawful user of or addicted to any controlled substance" may "possess . . . or . . . receive any firearm or ammunition." In addition, it is unlawful for "any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . is an unlawful user of or addicted to any controlled substance." *Id.* § 922(d)(3).

The ATF has promulgated regulations implementing § 922 and defining a person "who is an unlawful user of or addicted to any controlled substance." *See* 27 C.F.R. § 478.11. The ATF has also developed Form 4473, which confirms eligibility for gun ownership under § 922. Prospective purchasers of firearms fill out Form 4473 when they seek to buy a firearm. Form 4473 includes Question 11.e., which asks "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?" *See* Firearms Transaction Record Part I - Over-the-Counter ("Form 4473"),

https://www.atf.gov/file/61446/download. If the answer is "yes," the putative transaction is prohibited.

On September 21, 2011, the ATF issued an "Open Letter to All Federal Firearms Licensees" (the "Open Letter") that stated the following:

> [A]ny person who uses or is addicted to marijuana, regardless of whether his or her State has passed legislation authorizing marijuana use for medicinal purposes, is an unlawful user of or addicted to a controlled substance, and is prohibited by Federal law from possessing firearms or ammunition. Such persons should answer "yes" to question 11.e. on ATF Form 4473 . . . and you may not transfer firearms or ammunition to them. Further, if you are aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana under State law, then you have "reasonable cause to believe" that the person is an unlawful user of a controlled substance. As such, you may not transfer firearms or ammunition to the person, even if the person answered "no" to question 11.e. on ATF Form 4473.

Open Letter to all Federal Firearms Licensees dated Sept. 21, 2011, https://www.atf.gov/files/press/releases/2011/09/092 611-atf-open-letter-to-all-ffls-marijuana-for-medicinal-purposes.pdf.

It was against this regulatory and statutory context that appellant Wilson, on May 12, 2011, was issued a marijuana registry card by the State of Nevada. A few months later, on October 4, 2011, Wilson sought to purchase a firearm from Custom Firearms & Gunsmithing in the small community of Moundhouse, Nevada. As Wilson began to fill out Form 4473, the owner of the store, Frederick Hauser, stopped her from completing Question 11.e, which asked whether Wilson was an unlawful user of a controlled substance. Hauser explained that, because (as Hauser already knew) Wilson held a marijuana registry card, Wilson was deemed an unlawful user of a controlled substance and therefore someone to whom he could not sell a firearm without jeopardizing his federal firearms license. Wilson handed Hauser Form 4473 with Question 11.e. left blank. Hauser, who had received the ATF Open Letter three days earlier, nonetheless refused to sell her a firearm. Wilson alleges that Hauser's refusal to sell her a firearm was a direct consequence of Hauser's receipt of the Open Letter.

On October 18, 2011, Wilson filed the present action against the Government and, on December 17, 2012, filed a First Amended Complaint (the "FAC"). Wilson asserted five causes of action: (1) violation of the Second Amendment, (2) violation of the Equal Protection Clause of the Fifth Amendment, (3) violation of the procedural Due Process Clause of the Fifth Amendment, (4) violation of the substantive Due Process Clause of the Fifth Amendment, and (5) violation of the First Amendment. Wilson sought declarations that 18 U.S.C. § 922(g)(3) and (d)(3), as well as all derivative regulations, such as 27 C.F.R. § 478.11, and the Open Letter, were unconstitutional. Wilson also sought a permanent injunction barring enforcement of § 922(g)(3) and (d)(3), all derivative regulations, and the Open Letter. Finally,

Wilson sought compensatory and punitive damages, costs, fees, and expenses.

On January 31, 2013, the Government filed a motion to dismiss the FAC. In her opposition to Defendants' motion to dismiss, Wilson asserted that the Open Letter also violated the Administrative Procedure Act ("APA"). On March 11, 2014, the district court granted the Government's motion to dismiss the FAC. The district court also denied Wilson leave to amend the FAC to raise an APA claim, concluding that amendment would be futile. Wilson timely appealed.

## DISCUSSION

We review *de novo* the district court's dismissal for failure to state a claim, and we review for abuse of discretion the denial of leave to amend. *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). We review *de novo* all constitutional rulings. *Fournier v. Sebelius*, 718 F.3d 1110, 1117 (9th Cir. 2013).

## A.

As a preliminary matter, we address two jurisdictional issues:

*First*, as appellant's counsel conceded at oral argument, Wilson lacks standing to challenge 18 U.S.C. § 922(g)(3).[2]

---

[2] Neither party challenged the district court's determination that Wilson had standing, but we have an independent obligation "to examine jurisdictional issues such as standing [sua sponte]." *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). We review

Standing requires, among other elements, a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). Section 922(g)(3) criminalizes possession or receipt of a firearm by a unlawful drug user or a person addicted to a controlled substance. Wilson has not alleged that she is an unlawful drug user or that she is addicted to any controlled substance. Nor has she alleged that she possessed or received a firearm. Accordingly, Wilson has not alleged that § 922(g)(3) has injured her in any way. For the same reasons, she also has not shown a "*genuine* threat of *imminent* prosecution" under § 922(g)(3), as is generally required of plaintiffs raising pre-enforcement challenges to criminal statutes outside the First Amendment context. *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (internal quotation marks omitted). Accordingly, we affirm on the ground of lack of standing the district court's dismissal of Wilson's claims concerning § 922(g)(3).

Wilson does have standing, however, to raise her remaining claims challenging 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter. Wilson alleges that § 922(d)(3)'s ban on sales of firearms to individuals whom sellers have reasonable cause to believe are drug users, along with the regulations and guidance implementing this ban, prevented her from purchasing a firearm. These allegations are sufficient to satisfy the injury requirement.

*Second*, contrary to the Government's suggestion, Wilson's remaining claims are not moot. We review the

questions of standing *de novo*. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1087 (9th Cir. 2010).

mootness of a case *de novo*. *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003). The Government's concern is that because Wilson has not renewed her registry card throughout her appeal, she is no longer injured by 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter. Although the FAC discusses only the registry card issued in May 2011, which expired in 2012, Wilson represents that she has routinely renewed her card. The Government has not challenged the accuracy of this representation. Because Wilson has appealed from a granted motion to dismiss and her representation simply updates the allegation in the FAC that she has a current registry card, we accept it as true for purposes of her appeal. *Cf. Warth v. Seldin*, 422 U.S. 490, 502 (1975).

### B.

Wilson's first constitutional challenge to 18 U.S.C. § 922(d)(3), 27 C.F.R.  § 478.11, and the Open Letter purportedly rests on the Second Amendment. Specifically, Wilson claims that these provisions unconstitutionally burden her individual right to bear arms. *See District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). The district court concluded, however, that Wilson's Second Amendment challenge failed under our decision in *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011). In *Dugan*, we held that the Second Amendment does not protect the rights of unlawful drug users to bear arms, *id.* at 999–1000, in the same way that it does not protect the rights of "felons and the mentally ill," *Heller*, 554 U.S. at 626–27. The Government argues that if the Second Amendment does not protect the rights of unlawful drug users to bear arms, it must not protect any possible rights of unlawful drug users to purchase firearms or of firearm dealers to sell to unlawful drug users. Therefore, were Wilson an unlawful drug user, she would be beyond the

reach of the Second Amendment, and her claims would fail categorically.

However, taking Wilson's allegations as true, as we must on an appeal from a motion to dismiss, *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987), she is not actually an unlawful drug user. Instead, she alleges that, although she obtained a registry card, she chose not to use medical marijuana for various reasons, such as the difficulties of acquiring medical marijuana in Nevada, as well as a desire to make a political statement.[3] Regardless of her motivations, we agree that Wilson's claims do not fall under the direct scope of *Dugan*.[4]

This does not mean that her Second Amendment claim succeeds. We have adopted a two-step inquiry to determine whether a law violates the Second Amendment. We ask (1) "whether the challenged law burdens conduct protected by the Second Amendment and (2) if so . . . apply an appropriate level of scrutiny." *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013). Following this approach, we apply

---

[3] Wilson argues that, in light of the active political movements to decriminalize the use of marijuana in some states, her stance as a non-using registry cardholder allows her to express her support for marijuana legalization in a particularly meaningful way.

[4] *Dugan* does, however, dispose of Wilson's Second Amendment claims against 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter to the extent that they are facial, as distinct from as-applied, challenges. Under *Dugan*, there is no question that § 922(d)(3) could be enforced constitutionally, pursuant to 27 C.F.R. § 478.11 and the Open Letter, against a dealer who knowingly sold a firearm to a registry cardholder who was actively using marijuana.

intermediate scrutiny and uphold 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter.

> i.  Whether 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter Burden Protected Conduct

At *Chovan*'s first step, we ask "whether the challenged law burdens conduct protected by the Second Amendment, based on a historical understanding of the scope of the [Second Amendment] right, or whether the challenged law falls within a well-defined and narrowly limited category of prohibitions that have been historically unprotected." *Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014) (citations and internal quotation marks omitted). With respect to Wilson, this inquiry is straightforward: because Wilson insists that she is not an unlawful drug user, a convicted felon, or a mentally-ill person, she is not a person historically prohibited from possessing firearms under the Second Amendment. Accordingly, by preventing Wilson from purchasing a firearm, 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter directly burden her core Second Amendment right to possess a firearm, and we proceed to *Chovan*'s second step.

> ii.  Which Level of Scrutiny Applies to 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter

The appropriate level of scrutiny for laws that burden conduct protected by the Second Amendment "depend[s] on (1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right." *Chovan*, 735 F.3d at 1138 (citing *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011) (internal quotation marks omitted)). Application of the first prong is

guided by "*Heller*'s holding that the Second Amendment has 'the core lawful purpose of self-defense,' and that 'whatever else it leaves to future evaluation, [the Second Amendment] surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Jackson*, 746 F.3d at 961 (alteration in original) (quoting *Heller*, 554 U.S. at 630, 635). Here, as previously stated, 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter burden the core of Wilson's Second Amendment right because they prevent her from purchasing a firearm under certain circumstances and thereby impede her right to use arms to defend her "hearth and home." *Id.* (internal quotation marks omitted).

With respect to the second prong of the second *Chovan* step,

> laws which regulate only the *manner* in which persons may exercise their Second Amendment rights are less burdensome than those which bar firearm possession completely. Similarly, firearm regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not.

*Id*. (citations and internal quotation marks omitted). The burden on Wilson's core Second Amendment right is not severe. Title 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter bar only the sale of firearms to Wilson–not her possession of firearms. Wilson could have amassed legal firearms before acquiring a registry card, and 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter would

not impede her right to keep her firearms or to use them to protect herself and her home. In addition, Wilson could acquire firearms and exercise her right to self-defense at any time by surrendering her registry card, thereby demonstrating to a firearms dealer that there is no reasonable cause to believe she is an unlawful drug user.

Because 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter do not place a severe burden on Wilson's core right to defend herself with firearms, we apply intermediate scrutiny to determine whether these laws and guidance pass constitutional muster.

### iii. Applying Intermediate Scrutiny to 18 U.S.C. § 922(d)(3), 27 C.F.R. 478.11, and the Open Letter

Intermediate scrutiny "require[s] (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." *Chovan*, 735 F.3d at 1139 (internal quotation marks omitted). Wilson concedes that the Government had a substantial interest in enacting § 922(d)(3) to prevent gun violence.[5] However, she argues that the fit between 27 C.F.R. § 478.11 and the Open Letter, on the one hand, and violence prevention, on the other, is not reasonable because 27 C.F.R. § 478.11 and the Open Letter deprive so

---

[5] Wilson also argues that the purpose of the Open Letter was to crush the medical marijuana movement. On its face, the Open Letter serves no such purpose, and Wilson has not substantiated her suspicions with any facts. In addition, if the Government had wished to oppose the medical marijuana movement, it would not have needed the Open Letter–it would have needed merely to enforce existing federal statutes as then interpreted. *See* 21 U.S.C. § 812. (*But see* footnote 7, *infra.*)

many non-violent people, such as Wilson, who hold registry cards for political reasons, of their Second Amendment rights.

The Government argues that empirical data and legislative determinations support a strong link between drug use and violence. As to the first, studies and surveys relied on in similar cases suggest a significant link between drug use, including marijuana use, and violence. *See United States v. Carter*, 750 F.3d 462, 466–69 (4th Cir. 2014) (citing and discussing four studies and two government surveys); *United States v. Yancey*, 621 F.3d 681, 686 (7th Cir. 2010) (per curiam) (citing all but one of the studies and surveys in *Carter*, plus one additional study). While it would have been helpful for the Government to provide the studies in this case, Wilson has not challenged their methodology. We therefore have no occasion to evaluate the reliability of the studies and surveys, and instead accept them as probative.

Moreover, legislative determinations also support the link between drug use and violence. In particular, Congress enacted 18 U.S.C. § 922(g)(3), which bars unlawful drug users from possessing firearms, "to keep firearms out of the hands of presumptively risky people." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112 n.6 (1983).[6] It is beyond dispute that illegal drug users, including marijuana users, are likely as a consequence of that use to experience altered or impaired mental states that affect their judgment and that can lead to irrational or unpredictable behavior. *See Carter*, 750 F.3d at 469–70. They are also more likely to have negative interactions with law enforcement officers because

---

[6] A majority of states have enacted similar restrictions on possession of firearms by habitual illegal drug users. *See Yancey*, 621 F.3d at 683–84 (citing twenty-six state statutes and a District of Columbia statute).

they engage in criminal activity. *Id.* Finally, they frequently make their purchases through black market sources who themselves frequently resort to violence.

It may be argued that medical marijuana users are less likely to commit violent crimes, as they often suffer from debilitating illnesses, for which marijuana may be an effective palliative. They also may be less likely than other illegal drug users to interact with law enforcement officers or make purchases through illicit channels.[7] But those hypotheses are not sufficient to overcome Congress's reasonable conclusion that the use of such drugs raises the risk of irrational or unpredictable behavior with which gun use should not be associated.

By citing to the link between unlawful drug users and violence in this case, however, the Government incorrectly conflates registry cardholders with unlawful drug users. While these two categories of people overlap, they are not identical. The Government's showings of the link between drug use and violence would be sufficient were we applying intermediate scrutiny to 18 U.S.C. § 922(g)(3), which bars unlawful drug users from possessing firearms. But Wilson flatly maintains that she is not an unlawful drug user and is instead challenging a set of laws that bar non-drug users from purchasing firearms if there is only reasonable cause to believe that they are unlawful drug users, for instance, if they hold a registry card. Wilson correctly points out that the

---

[7] *See McIntosh*, 2016 WL 4363168, at *9–10 (holding that the United States Department of Justice is prohibited under a congressional appropriations rider from prosecuting individuals who are engaged in conduct permitted by state medical marijuana laws and who fully comply with such laws).

degree of fit between these laws and the ultimate aim of preventing gun violence is not as tight as the fit with laws like 18 U.S.C. § 922(g)(3), which affect only illegal drug users.

Nonetheless, the degree of fit between 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter and the aim of preventing gun violence is still reasonable, which is sufficient to survive intermediate scrutiny. The connection between these laws and that aim requires only one additional logical step: individuals who firearms dealers have reasonable cause to believe are illegal drug users are more likely actually to be illegal drug users (who, in turn, are more likely to be involved with violent crimes). With respect to marijuana registry cards, there may be some small population of individuals who–although obtaining a marijuana registry card for medicinal purposes–instead hold marijuana registry cards only for expressive purposes. But it is eminently reasonable for federal regulators to assume that a registry cardholder is much more likely to be a marijuana user than an individual who does not hold a registry card.

Because the degree of fit between 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter and their purpose of preventing gun violence is reasonable but not airtight, these laws will sometimes burden–albeit minimally and only incidentally–the Second Amendment rights of individuals who are reasonably, but erroneously, suspected of being unlawful drug users. However, the Constitution tolerates these modest collateral burdens in various contexts, and does so here as well. For instance, the Fourth Amendment allows an officer to burden an individual's right to be free from searches when the officer has "reason to believe" the person is armed and dangerous, *see Terry v. Ohio*, 392 U.S. 1, 27 (1968), a standard comparable to the "reasonable cause to

believe" standard of § 922(d). Moreover, as previously noted, there are various ways for individuals in Wilson's position to minimize or eliminate altogether the burdens that 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter place on their Second Amendment rights. Accordingly, 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter survive intermediate scrutiny, and the district court did not err in dismissing Wilson's Second Amendment claims.

## C.

Wilson also claims that 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter violate the First Amendment. Wilson's claim fails under long-standing First Amendment precedents.

### i.    Whether Wilson's Conduct is Protected by the First Amendment

We apply a two-pronged test, known as the *Spence* test, to determine when conduct contains sufficient elements of communication to fall within the scope of the First Amendment. First, we ask whether the "intent to convey a particularized message was present." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. Washington*, 418 U.S. 405, 410–11 (1974) (per curiam)). Second, we ask whether "the likelihood was great that the message would be understood by those who viewed it." *Id.* (quoting *Spence*, 418 U.S. at 410–11).

Wilson argues that her acquisition of a registry card qualifies as expressive conduct protected by the First Amendment. She allegedly intended to convey a particularized message in support of medical use of marijuana

and argues that in the midst of a hotly contested debate over the legalization of marijuana, viewers of the card would understand this message. The Government does not dispute that Wilson's acquisition of a registry card passes the *Spence* test, and we agree that, in the peculiar circumstances alleged, Wilson's acquisition of a registry card falls within the scope of conduct protected by the First Amendment. However, other actions that could give a firearms dealer reasonable cause to believe that Wilson, or another individual, was an unlawful drug user do not necessarily pass the *Spence* test and are not necessarily expressive. For that reason, Wilson's First Amendment claim rests only on her acquisition of a registry card.

### ii.   The Appropriate Level of Scrutiny

Courts apply strict scrutiny to laws that "proscribe particular conduct *because* it has expressive elements." *Johnson*, 491 U.S. at 406. "A law *directed at* the communicative nature of conduct must, like a law directed at speech itself, be justified by the substantial showing of need that the First Amendment requires." *Id.* (internal quotation marks omitted). But intermediate scrutiny applies when a law is directed at the non-communicative portion of conduct that contains both communicative and non-communicative elements: "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

Wilson argues that strict scrutiny must apply because the Open Letter was allegedly part of a campaign by the

Government to crush the medical marijuana movement. She points to news reports that discuss a "crackdown" by the Government on state medical marijuana systems. As noted earlier, this hypothesis seems unlikely; all the federal government would have needed to do to "crush" the medical marijuana movement would have been to enforce the federal laws prohibiting marijuana possession as then interpreted,[8] for the laws, as noted earlier, do not permit a medical exception. However, even accepting Wilson's allegations as true, they do not demonstrate that the Government targeted Wilson's expressive conduct of acquiring a registry card. They demonstrate only that the Government moved to enforce valid federal criminal statutes against the unauthorized acquisition or transfer of firearms by those who illegally use controlled substances. The production, distribution, and use of medical marijuana are not protected by the First Amendment, and efforts by the Government to impede–or even eliminate altogether–the production, distribution, and use of medical marijuana are not evidence of any conspiracy against free speech. Likewise, the Government's efforts to reduce gun violence through 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter are not directed at the expressive portion of Wilson's acquisition of a registry card. Accordingly, any burden the Government's anti-marijuana and anti-gun-violence efforts place on Wilson's expressive conduct is incidental, and the less searching *O'Brien* standard applies here.

---

[8] Of course, Congress would have to restore funding for the prosecution of marijuana offenses before the federal government could enforce the laws prohibiting possession. *See McIntosh*, 2016 WL 4363168, at *11 & n.5

iii.  Applying the *O'Brien* Standard

Under *O'Brien*,

> a government regulation is sufficiently
> justified [1] if it is within the constitutional
> power of the Government; [2] if it furthers an
> important or substantial governmental
> interest; [3] if the governmental interest is
> unrelated to the suppression of free
> expression; and [4] if the incidental restriction
> on alleged First Amendment freedoms is no
> greater than is essential to the furtherance of
> that interest.

*O'Brien*, 391 U.S. at 377. The Open Letter satisfies each of
these conditions.

With respect to the first *O'Brien* condition, Wilson argues
that the Open Letter is analogous to the Subversive Activities
Control Act of 1950, which barred any member of designated
Communist groups from employment in defense facilities and
which the Supreme Court held violated the First Amendment
in *United States v. Robel*, 389 U.S. 258 (1967). But *Robel* and
its discussion of the freedom of association is irrelevant to the
question whether the Government may constitutionally
regulate the sale and possession of firearms. It may indeed do
so, and so the Open Letter meets the first *O'Brien* condition.

With respect to the second *O'Brien* condition, although
Wilson concedes that preventing violent crime is an
important interest, she argues that the Government has failed
to show that the Open Letter furthers this interest. She points
out that the Government has failed to marshal any evidence

of the efficacy of the Open Letter in reducing gun violence, despite its being in effect since 2011. But the Government is not required to make such a specific showing in this context. Instead, our discussion of Wilson's Second Amendment claim suffices to show that the Open Letter furthers the aim of preventing gun violence. Registry cardholders are more likely to be marijuana users, and illegal drug users, including marijuana users, are more likely to be involved in violent crimes. *See Carter*, 750 F.3d at 466–69; *Yancey*, 621 F.3d at 683–84. Accordingly, preventing those individuals who firearm dealers know have registry cards from acquiring firearms furthers the Government's interest in preventing gun violence.

With respect to the third *O'Brien* condition, Wilson again argues that the purpose of the Open Letter was the suppression of support for medical marijuana. As discussed above, neither the Government's efforts to reduce gun violence nor its efforts to curtail marijuana use are related to the suppression of free expression.

With respect to the fourth *O'Brien* condition, Wilson argues that the incidental effect of the Open Letter on her First Amendment rights is greater than is essential to reduce gun violence. In particular, she argues that the Open Letter places her on the horns of a constitutional dilemma: she must either surrender her Second Amendment right to possess a firearm or her First Amendment right to express her support for medical marijuana use. Wilson faces no such dilemma. The Open Letter burdens only a single form of expression in support of medical marijuana use–the holding of a registry card. Otherwise, Wilson may advocate vigorously and as publicly as she wishes for medical marijuana use while possessing firearms. Moreover, the burden that the Open

Letter does place on this single form of expression is minimal. As explained above, Wilson may purchase firearms before acquiring or after surrendering a registry card. As a practical matter, Wilson is not caught in any dilemma, and the Open Letter's incidental effect on her First Amendment rights is no greater than necessary to reduce gun violence.

Because the Open Letter satisfies each of the *O'Brien* conditions, it survives intermediate scrutiny, and the district court did not err in dismissing Wilson's First Amendment claims.

## D.

Wilson also raises Fifth Amendment claims against 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter. In particular, she argues that the Open Letter violates her procedural due process rights protected by the Due Process Clause of the Fifth Amendment and violates the Equal Protection Clause as incorporated into the Fifth Amendment.[9] These claims fail.

To begin with, Wilson's procedural due process rights have not been violated. "A procedural due process claim has

---

[9] Wilson also raised substantive due process claims in the district court, but she addresses their dismissal in conclusory fashion on appeal, arguing only that she stated a substantive due process claim because of her fundamental right to choose a course of medical treatment. This argument is foreclosed by our decision in *Raich v. Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007) ("[F]ederal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician to alleviate excruciating pain and human suffering."). Accordingly, the district court did not err in dismissing Wilson's substantive due process claim or in denying her leave to amend it.

two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998). Wilson argues that 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter deprive her of her liberty interest in simultaneously carrying a registry card and purchasing a firearm. She contends that this deprivation occurs without any process–only a determination that she holds a registry card. However, Wilson does not have a constitutionally protected liberty interest in simultaneously holding a registry card and purchasing a firearm. Moreover, she has failed to state a procedural due process claim, and the district court did not err in dismissing her claim.

Likewise, 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter do not violate the Equal Protection Clause. "The first step in equal protection analysis is to identify the state's classification of groups. . . . The next step in equal protection analysis would be to determine the level of scrutiny." *Country Classic Dairies, Inc. v. Mont., Dep't of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). "[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976) (per curiam) (footnote omitted).

Wilson argues that 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter disadvantage several groups, including registry cardholders versus users of medical marijuana in states where registry cards are not required. She also argues that she is being treated differently from other

persons with similar medical conditions who have pursued other methods of treatment. None of these groups, however, is a suspect or quasi-suspect class. In addition, as discussed above, 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter do not impermissibly interfere with the exercise of any fundamental rights, including Wilson's right to possess firearms. Accordingly, we apply rational basis scrutiny.

Title 18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and the Open Letter survive rational basis scrutiny because they are reasonably related to reducing gun violence, as explained above. Accordingly, the district court did not err in dismissing Wilson's Fifth Amendment claims.

## E.

Wilson also claims that the Open Letter violated the APA. Wilson did not plead a specific cause of action for violations of the APA in the FAC,[10] and the district court denied her leave to amend to do so, concluding that any such amendment would be futile. Wilson argues that the Open Letter violated the APA because it is a legislative rule that must go through notice-and-comment procedures under 5 U.S.C. § 553(b) & (c) but did not.

---

[10] Wilson argues that, although she did not set out her APA claim as formally as her other claims, she nonetheless adequately pleaded a violation of the APA under Federal Rule of Civil Procedure 8(a)'s notice pleading standard. We do not reach this issue because Wilson's APA claim fails regardless of whether it was properly pleaded under Rule 8(a). In other words, the district court did not abuse its discretion in denying Wilson leave to correct any deficiency in her pleading of her APA claim because any such amendments would be futile.

Title 5 U.S.C. § 553(b)(3)(A) exempts "interpretative rules" and "general statements of policy" from the notice-and-comment requirement of agency rulemaking. The Supreme Court has described interpretive rules as materials "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (internal quotation marks omitted). We have stated that "interpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule. Legislative rules, on the other hand, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1087 (9th Cir. 2003) (citation omitted). Specifically, we have identified three circumstances when a rule has the "force of law" and is therefore legislative: "(1) when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked its general legislative authority; or (3) when the rule effectively amends a prior legislative rule." *Id.* (citing *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993)).

The first two *Hemp Industries* categories do not apply here: 18 U.S.C. § 922(d)(3) provides an adequate legislative basis for enforcement action even without the Open Letter, and the ATF did not explicitly invoke any legislative authority when it published the Open Letter.

Wilson argues that the Open Letter falls into the third *Hemp Industries* category because it effectively amended 27 C.F.R. § 478.11. Specifically, she argues that the Open Letter impermissibly expands 27 C.F.R. § 478.11's definition of an "unlawful user" of illegal drugs to include registry

cardholders who use marijuana. Section 478.11 defines an unlawful user as "any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician." Wilson contends that, because a medical recommendation must be obtained to receive a marijuana registry card, a holder of a registry card who uses marijuana has not used a controlled substance in a manner other than as prescribed by a licensed physician. This is incorrect as a matter of federal law. Under 21 U.S.C. § 812, marijuana is a Schedule I controlled substance, meaning that–as far as Congress is concerned–marijuana "has no currently accepted medical use in treatment[, and] there is a lack of accepted safety for use of the . . . substance under medical supervision." 21 U.S.C. § 812(b)(1)(B) & (C). No physician may legally prescribe marijuana as a matter of federal law, and no user of medical marijuana is using it "as prescribed by a licensed physician" within the meaning of 27 C.F.R. § 478.11.

Wilson also characterizes the Open Letter as making a blanket assertion that any individual with a registry card is a marijuana user.  According to Wilson, this blanket assertion is made without any investigation or due process, and is therefore unlike the illustrations provided in 27 C.F.R. § 478.11 that assist others in determining when someone can reasonably be determined as using a "controlled substance in a manner other than as prescribed by a licensed physician."[11]

---

[11] Wilson points to the following instances identified in 27 C.F.R. § 478.11 as examples of conduct or behavior that may raise an inference of current use of a controlled substance:

> a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest

However, the Open Letter does not make a blanket assertion that all registry card users are marijuana users, it simply clarifies that a firearms dealer has "reasonable cause to believe" an individual is an unlawful user if she holds a registry card. This inference falls well within the scope of 27 C.F.R. § 478.11, which states that "[a]n inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time." A marijuana registry card is circumstantial evidence, although by no means dispositive evidence, of recent use or possession of marijuana. Moreover, it is immaterial that registry cards are different from the illustrations mentioned in 27 C.F.R. § 478.11 that may raise an inference of unlawful drug use. Helpful examples in regulations need not be exhaustive. Indeed, that is one reason agencies publish guidance like the Open Letter–to provide additional examples that "explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule." *Hemp Indus.*, 333 F.3d at 1087. Accordingly, we agree with the district court that the Open Letter is "textbook interpretative" and that it was exempt from notice-and-comment procedures under 5 U.S.C. § 553(b)(3)(A). The district court did not err in dismissing Wilson's APA claim, to the extent it was pleaded, or in denying Wilson leave to amend her complaint to expand her APA claim.

occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**

9th Circuit Case Number(s) | 14-16840

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*****************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) |

*****************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) September 16, 2016 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

John R. Lott
Crime Prevention Research Center
212 Lafayette Ave.
Swarthmore, PA  19081

Signature (use "s/" format) | s/Jonathan M. Eisenberg